UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 3:07-CR-134 (JBA) |
| | ) | |
| IONIA MANAGEMENT S.A., | ) | |
| | ) | |
| Defendant. | ) | |

## SPECIAL MASTER'S SIXTH REPORT

**I.     Introduction and Status of Work**

This report is made pursuant to the Special Master Appointment and Scope of Work order dated April 18, 2008, in the above matter (the "Special Master Order").

The Special Master Order contemplates Special Master hearings will be held in the first weeks of December and June each year. However, scheduling difficulties on the part of the parties and the audit schedules of vessels have caused hearings to be scheduled more often on a January/July schedule. The Sixth Special Master's hearing was held on July 12, 2011 and was conducted by telephone conference call. Prior to the hearing, on June 10, 2011, the undersigned provided the parties with a list of topics that would be addressed at the hearing. The United States suggested an additional topic – a determination of the form and scope of the final Special Master's Hearing – which was added to the agenda on July 5, 2011.

## II. July 12, 2011 Hearing

### A. Summary of proceedings and evidence

The hearing was held by telephone conference call on July 12, 2011. The undersigned proposed that the Sixth Special Master's hearing be conducted by conference call because final audits of all of the Ionia vessels proposed to trade in the United States had not yet been completed and Ionia had not had the opportunity to respond to the final audits that had been completed. The undersigned proposed and scheduled an abbreviated, telephone hearing for July, 12, 2011, with the final comprehensive in-person hearing to be held on or about October 20, 2011, after the final audits on all vessels had been completed, Ionia had responded to the recommendations and observations in the final audits and the Independent Environmental Consultant ("IEC") and the Independent Corporate Consultant ("ICC") had the opportunity to comment. This procedure would provide maximum information to the Court before the end of probation on December 14, 2011. No party objected to holding the July, 2011 Sixth Special Master's Hearing by conference call.

The hearing was convened at 10:00 a.m. EDT on July 12, 2011. Participating for the United States was David O'Connell, trial attorney, Environmental Crimes Section, U.S. Department of Justice. Ionia was represented by Michael Chalos and George Kontakis. Also participating were United States Coast Guard Lieutenant Commander Channing D. Burgess, United States Probation Officer Patrick Norton, IEC Captain Richard Wigger; and ICC James Sanborn. Krystyna Tsochloas, Ionia's Safety and Quality Manager, Environmental Management Representative ("EMR") and Designated Person Ashore and George Karagiorgis, Ionia's Technical Manager and Corporate Compliance Manager ("CCM") appeared as witnesses.

Evidence at the hearing consisted principally of Ms. Tsochlas' testimony, supplemented by Mr. Karagiorgis, directed to the issues set out in the undersigned's letter to the parties of June 10, 2011 (attached as Appendix A) and the additional issue of the determination of the form and scope of the final Special Master's hearing to be held in October 2011.

As has been usual in the Special Master's hearings in this case, testimony was taken in a somewhat informal manner. Ms. Tsochlas and Mr. Karagiorgis were placed under oath by a court reporter present in the undersigned's office in Anchorage, Alaska. The witnesses were reminded that their testimony would be subject to the provisions of 18 U.S.C. § 1001. Ms. Tsochlas was allowed to testify in a narrative with the assistance of a PowerPoint presentation and additional documents that had been provided to the parties and to the undersigned before the hearing. Questions were interposed during the narrative by the Special Master, the IEC, the ICC, the government representatives and Ionia's counsel. Mr. Karagiorgis testified as necessary to supplement Ms. Tsochlas' testimony or in response to questions from the parties. The IEC and ICC also stated their views on the issues raised at the hearing.

A transcript of the hearing is attached as Appendix B.

**B.    Findings**

Based on the testimony at the hearing, the documents presented and the reports of the audits conducted by the IEC, I make the following findings by preponderance of the evidence:

1. <u>General</u>

    a. Krystyna Tsochlas continues to serve as Ionia's Safety and Quality Manager, Environmental Management Representative and Designated Person Ashore. She has been directly and substantially involved in Ionia's efforts to comply with the terms of probation and the requirements of the Special Master Order.

b. Georgios Karagiorgis continues to serve as head of Ionia's Technical Management Department and as Corporate Compliance Manager. Mr. Karagiorgis is familiar with the duties of the CCM under the Special Master Order and has been directly and substantially involved in carrying out Ionia's efforts to comply with the terms of probation and the requirements of the Special Master Order.

c. The final audit of the M/T THEO T was conducted while the vessel was at anchor at Cristobel, Panama and underway from Cristobel to the Panama Canal, March 13-16, 2011.[1] The parties were supplied with the report of the audit on March 30, 2011; it is attached as Appendix C. The final audit of the M/T ESTIA was conducted while the vessel was underway from Paldiski, Estonia to Skagen, Denmark, May 21-25, 2011. The IEC's report of the audit was distributed to the parties on June 15, 2011; it is attached as Appendix D. The final audit of the M/T FIDIAS was conducted underway from Piraeus, Greece to Venice, Italy, May 22-25, 2011. The IEC's report of the audit was distributed to the parties on June 3, 2011; it is attached as Appendix E. Ionia has not yet provided a response to any of these final audits.

d. Since the Special Master's hearing in January 2011, Ionia has submitted records relevant to waste oil generation and management and processing aboard the M/T FIDIAS, the M/T THEO T, the M/T ESTIA, and the M/T PLOUTOS (the "Covered Vessels") on a monthly basis. Given the trading schedule of the vessels and the necessity of transmitting many of the records by post from ports of call, the time for transmission to the required recipients has been reasonable. The IEC and the ICC

---

[1] The report of the M/T THEO T's final audit was erroneously titled "Ongoing Environmental Audit." It should have been designated as "Final."

have communicated with Ionia management periodically on topics related to progress in implementing the SWOMS, training issues, document production and audit scheduling.

    2.    <u>Progress in fully implementing the SWOMS</u>

    a.    The SWOMS units are installed and operational onboard all four Covered Vessels. As of 18 April 2011, the SWOMS have been transmitting data on a daily basis and are functioning as designed except as noted below.

    b.    Comparison of SWOMS and manual sounding data made by the IEC auditors during the final audits of the M/T ESTIA, M/T FIDIAS and M/T THEO T indicated the data reported and transmitted by the SWOMS was within five percent (5%) of the data reported by manual soundings with two exceptions: the data from the waste oil tank on the M/T FIDIAS and the fuel oil purifier sludge tank on the M/T ESTIA. The M/T FIDIAS waste oil tank data generated from 21 May 2011 to 25 May 2011 indicated such wide variation between the SWOMS data and manual sounding data as to render the SWOMS data virtually useless. (On two occasions, variations of over five thousand percent (5,000%) were found.) Variations between SWOMS data and manual soundings on the M/T ESTIA fuel oil purifier sludge tank indicate variations in the neighborhood of ten percent (10%), a variation that is not dramatic, but significant nonetheless. Ms. Tsochlas testified that the variations in the M/T FIDIAS waste oil sludge tank occurred because of the inherent difficulties in measuring the contents of the tank electronically: the tank is small (1.79 m³ capacity), operates at high heat with a good deal of vaporization of the contents, and is subject to frequent content transfers. Ionia did not indicate any proposed remedy. Ionia offered no reason for the variations observed in the M/T ESTIA fuel oil purifier sludge tank.

The covered vessels currently transmit daily and hourly data from the vessels to Ionia's shoreside offices. All hourly and daily reports are maintained in the company's electronic filing system. Each month manually maintained records, including soundings, oil record book entries, and other manually recorded data, are sent to Ionia's shoreside offices. Pursuant to procedures set out in Ionia's Environmenttal Management System, the manually recorded data is compared with the daily SWOMS data to identify anomalies. If anomalies are found, the electronically stored hourly data is utilized for further investigation to determine the source of the anomaly. This procedure is consistent with the requirements in the Special Master Order. To date, Ionia has not found it necessary to utilize the stored electronic data to identify or analyze anomalies.

  c. Ionia anticipates no further changes to the SWOMS. The question of whether the SWOMS will be installed on other vessels in Ionia's fleet is under consideration.

  d. As of July, 2011, the cost of implementing the SWOMS on covered vessels during the term of probation has been $482,105.58, of which $376,265.58 were direct out-of-pocket costs. The remainder is an allocation of the time value of Ionia's personnel in implementing and monitoring the SWOMS data.

 3. <u>Results of Internal audits</u>.

  a. Ionia has continued its system of internal audits on its vessels. Thus far in 2011, internal audits were conducted on the M/T THEO T (February 2011), M/T FIDIAS (March 2011), and M/T PLOUTOS (May 2011). No internal audit has been conducted on the M/T ESTIA during 2011. The last internal audit conducted on the M/T ESTIA occurred in November 2010.

b.      Comparison of the IEC's final audits of the M/T FIDIAS and M/T PLOUTOS with the reports of the internal audits demonstrates some potential inconsistencies between the findings of the IEC auditors and the Ionia internal auditors. Some of these inconsistencies can be attributed to clerical error, some to expected variations in results of random sampling of numerous documents, and others to a difference in the rigorousness of the audits. Inasmuch as Ionia has yet to have the opportunity to respond to the observations and recommendations in the IEC's final audits, I believe it is premature to make any findings about the adequacy of Ionia's internal audit program based on these inconsistencies. It is expected that Ionia will address them in its response to the IEC's final audits.

4.      Ionia's training program.

a.      Ionia has added a number of titles to its library of computer-based training sessions available onboard the vessels, including the EPA Vessel General Permit, the Vapor Emission Control, Ship-to-Ship Transfer Plans and the Ship Energy Efficiency Management Plan.

b.      Implementation of Ionia's superintendent onboard training program continues. Training sessions have been held on the M/T ESTIA in March-April 2011, the M/T KRITON in November 2010, the M/T PLOUTOS in September-October 2010 and May 2011, and the M/T FIDIAS in July 2011. A superintendent onboard training session has not been held on the M/T THEO T.

c.      Ionia's Crew Manager visited the crew training facilities in Manila during June and July 2010, December 2010, and June 2011. Each visit was conducted by Captain Panagiotis Tsantes, Ionia's Crew Manager, and lasted from one to two weeks.

On these visits Captain Tsantes visited the Vision Marine Recruiting Services Corporation and the independent training centers used by Vision Marine Recruiting Services Corporation in Manila. Ionia provided Captain Tsantes' reports of his visits to the Manila facilities to the parties, the IEC, the ICC and the undersigned before the July 12, 2011, hearing.

        d.    Ionia has begun implementing a computer-based environmental officer course designed to train its Chief Officers to be onboard environmental officers. The course has been installed at the manning agent in Manila and at Ionia's offices in Greece. The course consists of a number of computer-based training modules which are designed to broaden the officers' understanding of environmental issues onboard and provide practical guidance. The course modules include topics that provide information on the necessity for the position of an onboard environmental officer, understanding environmental management, important environmental concepts, environmental regulations such as MARPOL, the company's environmental policies, setting up an environmental system onboard and handling incidents.

## III. Conclusion

Based on the findings in this report and the previous Special Master's reports, I make the following conclusions:

**A.**    Ionia continues to make progress in achieving a high level of compliance with the United States and international industry environmental standards. Ionia's EMR and its CCM both demonstrate well-considered, systematic approaches to ensure acceptable standards of environmental accountability.

B. Ionia has installed a SWOMS in compliance with the material requirements and terms and conditions of its probation and the Special Master Order.

C. Ionia has instituted an Environmental Management Plan pursuant to the recommendations of the IEC. Ionia has demonstrated a commitment to implement the EMP and to train shoreside and seagoing personnel in its operation. Ionia has established and implemented a comprehensive training program, including computer-based training and an environmental officer course.

D. Ionia has submitted it shipboard records as required in Paragraph 4(a) of the Special Master Order.

## IV. Recommendations

A. Ionia should continue to work with Vigilant Marine Systems, LLC, or other hardware or software suppliers to minimize inaccuracies in the SWOMS data.

B. Ionia should submit its responses to the observations and recommendations and the IEC's final audits of the covered vessels, including a discussion of any inconsistent findings in Ionia's internal audits.

C. On consideration of the requirements of the Special Master Order, and the findings, conclusions and recommendations in previous Special Master reports, the final hearing in this matter should address whether Ionia has complied with the terms of its probation by achieving the objectives required in the Special Master Order. Specifically, the hearing should address whether Ionia has:

1. developed effective procedures for its crewmembers to keep accurate and verifiable written records which account for the generation, storage, processing, transfer and

disposal of waste oil, oily bilge water, sludge and other oil contaminated waste generated in the engine room;

       2.      maintained shipboard records in accordance with Paragraph IV.a. of the Special master Order;

       3.      installed and maintained a SWOMS in accordance with Paragraph IV.b. of the Special Master Order;

       4.      developed an effective methodology and procedures to analyze and compare the shipboard records with the electronic records generated by the SWOMS onboard the covered vessels;

       5.      developed effective, systematic procedures for continuous assessment in improvement of Ionia's compliance efforts so as to foster a culture of compliance from senior managers of the company to the lowest level crewmembers; and

       6.      implemented onboard the Covered Vessels all the requirements set forth in Attachment B of the Special Master Order ("Minimum Engineering Risk Mitigation Measures").

Respectfully submitted this 3rd day of August, 2011.

                                                /s/ Robert C. Bundy
                                                Robert C. Bundy, Special Master

SERVICE LIST

(a) US Attorney's Office
District of Connecticut
Connecticut Financial Center
157 Church Street, Floor 23
New Haven, CT 06510

ATTN: Mr. Anthony Kaplan, Esq.
Email: anthony.kaplan@usdoj.gov

(b) U.S. Department of Justice
Environmental Crimes Section
601 "D" Street, NW
Washington, D.C. 20004

ATTN: Ms. Lana Pettus
David E. O'Connell
Email: lana.pettus@usdoj.gov
david.oconnell@usdoj.gov

(c) U.S. Coast Guard
Commandant (CG-543)
Office of Vessel Activities
Foreign Vessel/Offshore Activities Div.
2100 Second St., S.W.
Washington, D.C. 20593-0001

Attn: LT Chaning D. Burgess
Email: Chaning.D.Burgess@uscg.mil

(d) U.S. Probation Department
District of Connecticut
157 Church Street, 22nd Floor
New Haven, CT 06510

Attn: Mr. Patrick Norton
Email: Patrick_Norton@ctp.uscourts.gov

(e) Chalos, O'Connor & Duffy, LLP
366 Main Street
Port Washington, NY 11050

Attn: Mr. Michael Chalos, Esq.
Email: mchalos@codus-law.com