# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,    )
    )
               Plaintiff,    )
    )
        vs.    )     CRIMINAL NO. 3:07-CR-134 (JBA)
    )
IONIA MANAGEMENT S.A.,    )
    )
               Defendant.    )

## SPECIAL MASTER'S SEVENTH REPORT

### I.    Introduction and Status of Work

This report is made pursuant to the Special Master Appointment and Scope of Work order dated April 18, 2008, in the above matter (the "Special Master Order").

On December 14, 2007, this Court imposed sentence on Ionia Management S.A. ("Ionia") after a jury convicted it on 18 counts contained in four consolidated indictments for violations of the Act to Prevent Pollution from Ships (33 U.S.C. § 1908(a); Falsifying Records in a Federal Investigation (18 U.S.C. § 1519); Obstruction of Justice (18 U.S.C. § 1505); and Conspiracy (18 U.S.C. § 371). The Court imposed a fine in the amount of $4,900,000 and placed Ionia on probation for a period of 48 months. The conditions of probation included the requirement that all Ionia vessels entering U.S. ports be equipped with an electronic device for recording operations of the Oil Water Separator and provided that a special master would be appointed by the Court to hold hearings and monitor Ionia's compliance with certain of the terms of probation.

On January 20, 2008, the Court found that Ionia was in violation of its probation due to the entry in a U.S. port of its vessel, the M/T DROMEAS, that was not equipped with the required recording equipment. The Court postponed a decision on whether to impose additional sanctions until after submission of the first report by the Special Master. On April 18, 2008, the Court entered the Special Master Order setting out the duties of the Special Master and further specifying additional obligations on all vessels technically managed or operated by Ionia which call on U.S. ports.

Pursuant to the Special Master Order, the first Special Master's hearing was held in New Haven, Connecticut on December 10, 2008. Thereafter, Special Master hearings were held approximately every six months. Two of the Special Master hearings were conducted by telephone conference call. The Sixth Special Master hearing was held July 12, 2011. The seventh Special Master hearing was held only four months later, on October 19, 2011, in order to provide the Special Master sufficient time to make a report and recommendation for the Court, and for the Court to make a final determination whether Ionia has complied with its terms of probation by December 14, 2011, when Ionia's probation is set to expire.

As of the Special Master's hearing on October 19, 2011, the Independent Environmental Consultant ("IEC"), Compliance Systems Inc. had completed final audits on all four vessels in Ionia's fleet that trade in U.S. ports and Ionia had responded to each of the final audits.

Prior to the October 19, 2011 hearing, the undersigned provided the parties with a list of topics that would be addressed at the hearing. The parties were invited to suggest additional topics, and no party did so. The parties complied with all pre-hearing requirements.

## II.    October 19, 2011 Hearing

The seventh Special Master's hearing was held at the federal courthouse in New Haven, Connecticut.  The United States was represented by David O'Connell, trial attorney, Environmental Crimes Section, U.S. Department of Justice.  Ionia was represented by Michael Chalos and George Kontakis.  Also present were:  United States Coast Guard Lieutenant Commander Channing D. Burgess; United States Coast Guard First District Legal Officer Commander Michael Antonellis; IEC representative Captain Richard Wigger; Independent Corporate Consultant ("ICC") James Sanborn and United States Probation Officer Patrick Norton.  Also present on behalf of Ionia was Krystyna Tsochlas, Ionia's Safety and Quality Manager, Environmental Management Representative and Designated Person Ashore, and George Karagiorgis, Ionia's Technical Manager and Corporate Compliance Manager.

Evidence at the hearing consisted principally of the testimony of Ms. Tsochlas, supplemented with testimony by Mr. Karagiorgis, directed to the issues set out in the undersigned's letter to the parties dated September 15, 2011.  (Attached as Appendix A).

As has been usual in the Special Master's hearings in this case, testimony was taken in a somewhat informal manner.  Ms. Tsochlas was placed under oath and allowed to testify in a narrative with the assistance of a PowerPoint.  Questions were interposed during her narrative by the Special Master, the IEC, the ICC, Mr. O'Connell and Ionia's counsel.  Mr. Karagiorgis was also placed under oath and testified as necessary to supplement Ms. Tsochlas' testimony or in response to questions from the parties.  The IEC and ICC also stated their views on issues raised at the hearing.  A transcript of the hearing is attached as Appendix B.

III.  **Findings**

Based on the testimony at the October 19, 2011 hearing and previous hearings, the documents presented, the reports of the ongoing and final audits of Ionia's vessels, and Ionia's response to the IEC's audits, I make the following findings by a preponderance of the evidence:

A.  **General**

1.  Krystyna Tsochlas continues to serve as Ionia's Safety and Quality Manager, Environmental Management Representative and Designated Person Ashore. Ms. Tsochlas has been employed with Ionia since May, 2008. She has been responsible for Ionia's efforts to comply with the terms of probation and the requirements of the Special Master Order. Since she began her employment with Ionia, she has led the development and implementation of policies and procedures designed to facilitate compliance with environmental laws, regulations, international standards, and the terms of probation. She reports directly to Ionia's managing director. Ms. Tsochlas has a degree in naval architecture and is well informed on marine safety and environmental issues. She is an articulate and credible witness.

2.  Georgios Karagiorgis is head of Ionia's Technical Management Department and Corporate Compliance Manager ("CCM"). He began his employment with Ionia on January 2, 2009. Mr. Karagiorgis is familiar with the duties of the CCM under the Special Master Order and has been directly and substantially involved in carrying out Ionia's efforts to comply with the terms of probation and the requirements of the Special Master Order. He reports directly to Ionia's managing director. Mr. Karagiorgis is well informed on issues relating to the technical management of ships including pollution prevention and safety matters. He is a credible witness.

3.  Since the Special Master's sixth hearing in July 2011, Ionia has submitted

SPECIAL MASTER'S SEVENTH REPORT
PAGE 4

*United States of America vs. Ionia Management S.A.*
*Criminal No. 3:07 CR 134 (JBA)*

on a monthly basis records relevant to waste oil generation management and processing aboard Ionia's vessels that may call at U.S. ports: the M/T FIDIAS; the M/T THEO T; the M/T ESTIA; and the M/T PLOUTOS (the "Covered Vessels"). The records have been submitted within 40 days of the end of the month in which the records were generated. Given their trading schedules, the vessels out of necessity are sending many of the shipboard records by post from ports of call. The time for transmission to the required recipients has been reasonable. The IEC and the ICC have communicated with Ionia management periodically on topics relevant to Ionia's progress on probation.

        4.       The final audit of the M/T ESTIA was conducted while the vessel was underway between Estonia and Denmark, May 21-25, 2011. The IEC's report of the audit is attached as Appendix C and is adopted as a finding. The final audit of the M/T FIDIAS was conducted while the vessel was underway between Piraeus, Greece and Venice, Italy May 22-25, 2011. The IEC's report of the audit is attached as Appendix D and adopted as a finding. The final audit of the M/T THEO T was conducted while the vessel was underway in the vicinity Cristobel, Panama, March 13-16, 2011. The IEC's report of the audit is attached as Appendix E and is adopted as a finding. The final audit of the M/T PLOUTOS was carried out while the vessel was underway from Malta to Gibraltar, August 14-17, 2011. The IEC's report of the audit is attached as Appendix F and is adopted as a finding. Ionia's responses to these audits are attached as Appendix G. Each of the final audits were positive: each found environmental procedures to be well implemented, the officers and crew to be cooperative and positive throughout the audit, and senior officers fully committed to the purpose and philosophy of Ionia's Environmental Compliance Plan. With the exception of one observation of leaking machinery in the engine room of the M/T ESTIA all the audits, including the M/T ESTIA audit,

concluded that the overall conditions of the vessels and waste management equipment was very good.

5.      Ionia has developed and implemented an environmental management plan pursuant to recommendations made by the IEC in the IEC's Preliminary Report Of Findings dated August 18, 2008.  Although Ionia had in place a number of pollution prevention and waste stream management measures based on the requirements of ISO 14001 in its then-existing safety management system, it developed an enhanced and separate Environmental Management Plan (the "EMP") which was distributed throughout the fleet and maintained in Ionia's offices as the Environmental Management System Manual.  The EMP was put into full effect on July 1, 2009 throughout all the vessels in its fleet.  The EMP has been amended and supplemented numerous times based on the IEC's audit findings, Ionia's internal audits and changes in law, regulation and international standards.  Ionia has made commendable efforts to keep the EMP complete and up-to-date with U.S., port state and international industry standards.

6.      Although she did not have specific figures at hand, Ms. Tsochlas estimated that Ionia has spent approximately US $1 million in complying with the terms of probation, exclusive of fines and special assessments.

7.      Ionia's senior management does not actively participate in industry associations, with the exception of one member on the technical committee of the Greek branch of the Bureau Veritas, a classification and certification organization.

B.      **Recordkeeping**

1.      Since the beginning of probation, Ionia has developed effective procedures for keeping accurate and verifiable records which account for the generation, storage, processing, transfer and disposal of waste generated in the engine room.  Those records include the

following:

        a.      <u>Extraordinary engine room operations monitoring</u>.  Ionia requires the maintenance of an Extraordinary Engine Room Operations Log that requires recording of any operation occurring in the engine room that would result in the increased generation of waste, including unintended or accidental releases of water, fuel oil, lube oil from any engine room machinery or the need for frequent draining of the fuel oil service and settling tanks and engine lube oil sump tanks of excessive water.  In the event of machinery failure that could result in an unintended release of fluids, the situation must be recorded and an explanation for the handling of the released fluid must be provided.

        2.      <u>Oil-to-Sea Interface Management</u>.  The only oil-to-sea interface machinery on the Covered Vessels is the stern tube.  Ionia requires that the stern tube tanks be sounded daily and the results entered in the Engine Log Book.

        3.      <u>Tank Sounding Log</u>.  All tanks which may contain engine room wastes are sounded on a daily basis and the soundings are recorded in the Tank Sounding Log Book maintained on each vessel.

        4.      <u>Fuel and Lube Oil Management and Bilge and Sludge Production Monitoring Report</u>.  Ionia requires its chief engineers to produce a weekly report recording the quantity of bilge and sludge retained onboard, the number of hours that the incinerator has been operated and the number of hours that the oil water separator ("OWS") has been operated.  The weekly report is forwarded to Ionia's Technical Department to review.  The assigned Technical Superintendent is required to investigate any unusual findings.  In addition, the reason for any increase in production of sludges must be entered in the "remarks" section of the Tank Sounding Log.

5.     Oil Record Book, Parts I and II.  Detailed guidelines are provided in the EMP on the maintaining of the Oil Record Books Parts I and II in accordance with the port state, MARPOL, International Maritime Organization and company-specific requirements.

6.     Engine Log Book.  The EMP provides detailed guidelines on maintenance and testing of pollution prevention equipment, cleaning of the OWS source tank and any breach or incident involving the possible leakage of lube oil into the sea.

7.     Garbage Log Book.  The EMP requires maintenance of the Garbage Log Book by the chief offices in accordance with MARPOL Annex V requirements.

8.     Vessel's Environmental Report.  The EMP requires each vessel's chief officer to complete an environmental performance report each month which details the manner in which various garbage and potentially hazardous substances are handled onboard or disposed of ashore.

9.     Onboard Record Retention.  Pursuant to the EMP and Paragraph IV(a) of the Special Master Order, Ionia requires vessels to maintain onboard for three years the following records:

　　　　a.     daily tank soundings of all waste oil and oily water waste tanks;

　　　　b.     oil record book part I;

　　　　c.     engine room alarm printouts.

**C.     Special Waste Oil Management System ("SWOMS").**

1.     Ionia has installed onboard each of the Covered Vessels a SWOMS designed by Vigilant Marine Systems LLC to monitor and record the operations of the vessels' OWS, incinerator, bilge pump, and the levels of the bilge holding tank, oily bilge holding tank, sludge tank, waste oil tank and bilge wells.  The SWOMS monitors all operations of the tanks

continuously. A report is generated by the SWOMS on an hourly basis and is electronically transmitted to Ionia without the need for human intervention and contains the following data: date, time, vessel's position, current tank levels and volumes, operation of bilge pump, operation of OWS, status of overboard discharge valve, average PPM overboard and operation of incinerator. Another report is generated every 24 hours and transmitted electronically to Ionia's shoreside offices without the need for human intervention and contains the following data: date, time, vessel's position, current tank levels, operation of bilge pump, operation of OWS, status of overboard discharge valve, status of the PPM alarm, average PPM overboard, status of Oil Content Meter ("OCM") fresh water valve, status of oil purge valve and minimum and maximum tank levels and volumes throughout the previous 24 hours. The system utilizes a tamper-proof lockbox which secures the sample of the OCM and control of the overboard discharge valve. The lockbox controls and verifies that an adequate sample quantity is flowing through the OCM and that the sample has had adequate time to be measured by the OCM and that the OCM flushing water is not mixed with sample water. Should the lockbox detect any irregularities regarding the proper function of the oil water separator, the lockbox prevents the overboard discharge valve from opening. The SWOMS is also connected to a GPS antenna to provide the exact position of the vessel at the time of the opening and closing of the overboard discharge valve.

       2.     The SWOMS was specifically designed for Ionia, but is now offered by Vigilant Marine to the shipping industry as the "Enviro-Logger." See, www.vigilantmarine.com/products.html#logger. Although initial difficulties were encountered in the automatic transmission of data from the SWOMS and in arranging for hourly recording of the SWOMS data, those problems have been overcome by Vigilant Marine technicians. Also,

difficulties in the calibration of the SWOMS tank-volume sensors have been resolved for the most part. Currently, Ionia requires the chief engineer of each Covered Vessel to compare each day the SWOMS readings displayed on the vessel's Enviro-Logger with manual soundings conducted by the crew. The chief engineer is required to report all discrepancies between SWOMS and manual soundsing in excess of 5% (the level of tolerance recommended by Vigilant Marine), directly to the CCM, Mr. Karagiorgis. The CCM then arranges for a technician to go aboard the vessel at the next convenient port of call to address the issue, which typically has required an adjustment to the calibration of the sounding device.

3.    Ionia has developed an appropriate procedure for submission and comparison of SWOMS and shipboard records. Pursuant to Ionia's procedures, an Ionia shoreside technician ensures that daily and hourly reports are received from each vessel and maintained in Ionia's electronic filing system. The data from the daily reports are recorded in the company's data base and also entered on a spreadsheet that facilitates the comparison of the records. The monthly data submitted by the chief engineer (copies of the oil record book, tank sounding log book, engine room alarm printouts) is also entered on the spreadsheet. The superintendent engineer assigned to the particular vessel reviews the data displayed on the spreadsheet to insure that there are no inconsistencies between the daily SWOMS data and the monthly data submitted by the chief engineer. In the event of an inconsistency, the hourly data transmitted by the SWOMS is utilized for further investigations. To date, all discrepancies have been accounted for as calibration problems or clerical errors; accordingly, there has been no need to resort to the hourly transmitted data stored on Ionia's servers.

4.    After the expiration of probation, Ionia intends to maintain the SWOMS system on the Covered Vessels because of the substantial investment Ionia has made in the

system and because it is seen as a tool to insure continued compliance with environmental standards.

D.    **Procedures for continued assessment and improvement**.

1.    <u>Organization</u>.  Krystyna Tsochlas, Ionia's Safety and Quality Manager, Environmental Management Representative and Designated Person Ashore reports directly to the managing director, as does George Karagiorgis, Ionia's Technical Manager and Corporate Compliance Manager.  No budget limitations, even in the current economic downturn, have been placed on Ionia's environmental compliance expenditures, as Ionia has come to view high levels of compliance with environmental and safety standards to be necessary to obtain charters from shippers and to avoid costly fines.

2.    <u>Environmental Management Plan</u>.  As stated above, a separate EMP with an environmental management system manual, has been developed based on the requirements of the scope of work and the recommendations made by the IEC during the initial audit carried out on the M/T THEO T in 2008.  Since then, numerous revisions have been made to the EMP and the manual based on audit findings and regulatory changes.

3.    <u>Training</u>.  Ionia's training program has been totally changed and augmented since the beginning of probation.  It now consists of the following parts:  competency evaluation prior to joining; pre-joining familiarization and training ashore; onboard training; and superintendent onboard training.

a.    Competency evaluation.  An evaluation of each seafarer is carried out prior to joining an Ionia vessel.  The evaluation is focused on assessing the seafarer's competence overall with respect to the seafarer's responsibilities.  The results are used to ensure the seafarer is given training focused on the seafarer's needs.

b.     Pre-joining familiarization and training ashore.  All shipboard personnel attend a 10-day pre-joining familiarization program prior to signing on a vessel.  To ensure all seafarers' knowledge is current with regard to Ionia policies and industry standards, each seafarer must go through the entire pre-joining familiarization training regardless of whether the seafarer has crewed on an Ionia vessel before or has attended pre-joining familiarization in the past.  The familiarization training includes a number of topics related to environmental policy including Ionia's EMP, pollution prevention, reporting requirements, MARPOL issues, garbage handling and recordkeeping, the US Vessel General Permit, and other environmental topics.

c.     Onshore Seminars.  In addition to the pre-joining familiarization, in-house seminars are conducted at the manning agent in Manila on the following issues: shipboard environmental management systems; environmental management training, ISO 14001: 2004: Environmental Officer; volatile organic compounds; and Ionia's environmental management plan.  Ionia's training officer, Captain Tsantes, visits the Manila training facilities approximately twice per year to work with them on the training program.  Capt. Tsantes provides management with a detailed report of his observations and activities on each visit.

d.     Onboard Training.  Weekly training sessions are held onboard Ionia vessels pursuant to a detailed training program.  At least one week each month is focused on environmental training.

e.     Computer Based Training.  Computer based training units are installed at the manning agent in Manila and in Ionia's office in Greece as well as on all of Ionia's vessels.  Each seafarer is required to complete at least one CBT title per month, but seafarers can complete more titles, and often do, given the crewmembers' enthusiasm for CBT

training. A number of the CBT titles involve pollution prevention and compliance with MARPOL, and other international environmental standards.

f. Superintendent onboard training. Superintendents ride with each vessel and implement an onboard training program that has been prepared by the safety and quality department based, in part, on any recommendations or observations that have been made in company or third-party audits, previous shipboard training reports, accident, incident, injury and near-miss reports and management and master's reviews.

g. Ionia maintains a detailed record of all training given each seafarer, including CBT titles completed, onboard training, shoreside training and drills. Each seafarer's personnel file includes a detailed record of the seafarer's training.

h. The IEC reports that interviews with crew indicate that training is enthusiastically received and crewmen at all levels appear knowledgeable in the areas in which they have been trained.

4. Environmental Officer Program. Ionia has designated the chief officer as each vessel's environmental officer. The environmental officer is specially trained on environmental issues and reports to Ms. Tsochlas, Ionia's Environmental Management Representative.

5. Internal Audits. Since 2009, each department and vessel in Ionia is audited at least annually pursuant to a detailed audit checklist and protocol. The audit involves interviewing key personnel, reviewing and evaluating records and recording objective evidence of the status of the implementation of the EMP. Upon completion of the audit, the auditor holds a closing meeting with the person responsible for the area being audited and any other persons deemed necessary. During the closing meeting, the auditor presents the audit results and

SPECIAL MASTER'S SEVENTH REPORT
PAGE 13

*United States of America vs. Ionia Management S.A.*
Criminal No. 3:07 CR 134 (JBA)

findings and agrees with the responsible person on immediate actions to be taken in order to address any noted deficiencies or non-conformities.  The auditor then submits a report to Ms. Tsochlas, Ionia's Environmental Management Representative ("EMR"), within ten (10) days. Ms. Tsochlas reviews the report and upon completion of the review, circulates the report to the managing director and the heads of relevant departments.  Ms. Tsochlas monitors the implementation of established corrective and preventative actions.  (This procedure is used as well with regard to the IEC audits.)  She insures that internal audit results are included in the agenda of the Environmental Management Review meeting.

In addition to the annual audit, each vessel is attended by an Ionia technical superintendent twice per year.  During the attendance, the superintendent stays on the vessel while underway and reviews all areas of safety, navigation and environmental policies and procedures.

6.      Senior Management Attendance Onboard.  Ionia has recently implemented a policy in which at last once every quarter, a member of Ionia's senior management attends one of Ionia's vessels in order to promote the company's safety and environmental culture.  Senior management includes the technical manager, the crew manager, the operations manager, the safety and quality manager and the managing director.  The senior management member meets with all shipboard personnel in order to discuss the vessel's performance, safety and environmental.  The senior management member attending the vessel files a report confirming the matters discussed and the feedback he or she received from the crewmembers.

7.      Tanker Management and Self Assessment.  Ionia now utilizes the Tanker Management and Self Assessment ("TMSA") procedure introduced by the Oil Company International Marine Forum as a tool to help vessel operators assess, measure and improve their

management systems, including safety and environmental management. Ionia's participation in the TMSA procedures, together with the successful results of oil company vetting inspections has resulted in Ionia obtaining charters from at least one major oil company that had previously declined to do business with Ionia because of its conviction and status as a probationer.

### E. Implementation of Minimum Engineering Risk Mitigation Measures ("MERMM").

Attachment B of the Special Master Order requires Ionia to adhere to certain minimum engineering risk mitigation measures. Since entering probation, Ionia has implemented procedures and policies in compliance with the MERMM as follows:

1. <u>Environmental Tag System</u>. Ionia has implemented a procedure requiring seals on all flanges in the engine room sludge lines, bilge lines, sewage and gray water overboard lines and boiler blow down line as per ship-specific guidelines provided by the company's technical department. A bound seal log is maintained in accordance with the company's requirements. The master maintains an inventory of spare seals available onboard and spare seals are retained under his control. Although some non-conformities were observed in early audits, more recent audits have verified the system to be working appropriately.

2. <u>Bilge Main Cross Connections</u>. The EMP requires, and IEC audits have confirmed, that Ionia has complied with MERMM painting and signage requirements with regard to bilge main cross connections.

3. <u>Emergency Bilge Sections</u>. The EMP requires, and audits have confirmed, that bilge section valves not connected to the bilge main are painted brightly and are labeled for emergency use only.

4. <u>Blank Flanges</u>. The EMP requires, and IEC's audits confirm, that every blank or potentially removable flange associated with any piping leading overboard is fitted with

SPECIAL MASTER'S SEVENTH REPORT  
PAGE 15

*United States of America vs. Ionia Management S.A.*  
*Criminal No. 3:07 CR 134 (JBA)*

environmental seals through the flange bolts that will break when the bolt is removed.

        5.        <u>Bilge Sampling and OWS Performance Analysis</u>.  The EMP requires, and documentation confirms that samples taken by the IEC from the engine room bilges, the OWS and the bilge holding tank are forwarded to an appropriate laboratory for a content analysis.  The analysis is then provided to the OWS manufacturer in order to verify the equipment's capability to process the fluids having the content.

        6.        <u>Additional OWS and OCM Requirements</u>.  As set out in the EMP, Ionia has implemented the additional OWS and OCM requirements contained in the MERMM.  Additionally, the lockbox fitted on the OCM insures that the system is tamper proof.

        7.        <u>Recordkeeping</u>.  Ionia has implemented the EMP requirement that all soundings and logs required in the MERMM are to be retained onboard the vessel for a period of three years.

        8.        <u>Oil Record Book Entries</u>.  Ionia's has implemented the EMP requirement that entries made into the Oil Record Book Part I are to be made by the chief engineer and each page is to be signed by the chief engineer and the master.

        9.        <u>Tank Sounding Record Book</u>.  Ionia has implemented the EMP requirement that soundings of all waste, sludge and bilge tanks are to be carried out on a daily basis and pursuant to the IEC's recommendation, that each tank sounding be performed three times to insure accuracy.  The Tank Sounding Record Book is required to be initialed by the person who obtained the readings.

        10.        <u>Fuel Oil/Lube Oil Purifier Settings and Line Breaks</u>.  Ionia has implemented the system set out in the MP for monitoring fuel oil and lube oil management, including inclusion of relevant information in the Chief Engineer's Weekly Report which is

forwarded to the technical department on a weekly basis.  The Weekly Report includes notation of any extraordinary operations pertaining to fuel oil service and settling tanks and any unintended release of fluid in the engine room, together with an explanation as to how the unintended release of the fluid was handled.

        11.    <u>Oil-to-Sea Interfaces</u>.  On Ionia's vessels, the only system that has oil-to-sea interface is the stern tube.  Ionia has implemented the EMP requirement that the stern tube tanks are to be sounded daily and any replenishment of oil into such tanks and any ingress of water or drainage of water from the stern tube system are required to be logged into the Engine Log Book.

        12.    <u>Fleet Engineering Survey</u>.  Ionia has implemented a fleet engineering survey as required in the MERMM.  Completed surveys are submitted to the CCM for review.

## IV.    <u>Conclusions</u>.

A.    Ionia has developed effective procedures for its crewmembers to keep written records which account for the generation, storage, processing, transfer and disposal of waste oil, oily bilge water, sludge and other oil contaminated waste generated in the engine room.

B.    Ionia has installed a SWOMS in compliance with the material requirements and terms and conditions of its probation in the Special Master Order.  It has developed a procedure to compare SWOMS data with shipboard records to insure environmental compliance.

C.    Ionia has instituted an environmental management plan pursuant to the recommendations of the IEC.  Ionia has demonstrated a commitment to keep the EMP current with applicable regulations and standards and to implement the EMP aboard all its ships.

D.    Ionia has instituted a greatly expanded and modified training program both onshore and shipboard.  The training program is the equivalent of programs in many much larger

shipping companies and is commendable in its scope and in its acceptance by Ionia shoreside and shipboard personnel.

E.       Ionia submitted its shipboard records as required in Paragraph IV(a) of the Special Master Order.

F.       Ionia has made impressive progress in achieving a high level of compliance with the United States, international and industry environmental standards.  Ms. Tsochlas, Ionia's EMR, and Mr. Karagiorgis, Ionia's CCM, both demonstrate well-considered systematic approaches to insure high standards of environmental accountability.  Ionia's response to audits has been very positive and Ionia has maintained very aggressive improvement throughout the period of probation.  It is particularly significant that the last audit conducted by the IEC was "clean" in that no deficiencies were noted.  Ionia has been very impressive in its responsiveness to suggestions and its sophisticated use of systems to implement constructive change.  Both the ICC and the IEC believe they have seen the evolution of very positive attitudes of management toward instituting a culture that values environmental and safety concerns.

## V.       Recommendations

A.       Based on the substantial and measurable progress that Ionia has made in environmental compliance and in the attitude and culture of its personnel, it is recommended that no additional penalties be imposed on Ionia pursuant to the Court's finding of probation violation on January 28, 2008.  It is further recommended that probation not be extended beyond the current expiration date of December 14, 2011.

B.       It is recommended that the IEC, the ICC and the Special Master submit final invoices for their services to Ionia on or before November 15, 2011, and that Ionia arrange for payment of invoices that are in order by the expiration of its probation on December 14, 2011.

Respectfully submitted this 28th day of October, 2011.

/s/  Robert C. Bundy
Robert C. Bundy, Special Master

SPECIAL MASTER'S SEVENTH REPORT
PAGE 19

*United States of America vs. Ionia Management S.A.*
Criminal No. 3:07 CR 134 (JBA)

LIST OF APPENDICES

APPENDIX A:                     Special Master's Letter Dated September 15, 2011


APPENDIX B:                     Transcript of October 19, 2011 Hearing


APPENDIX C:                     May 21-25, 2011 Final Audit of M/T ESTIA


APPENDIX D:                     May 22-25, 2011 Final Audit of M/T FIDIAS


APPENDIX E:                     March 13-16, 2011 Final Audit of M/T THEO T
                                (Report indicates "Ongoing" but is actually "Final")


APPENDIX F:                     August 14-17, 2011 Final Audit of M/T PLOUTOS


APPENDIX G:                     Ionia's Responses to Final Audits

SERVICE LIST

(a)  US Attorney's Office
     District of Connecticut
     Connecticut Financial Center
     157 Church Street, Floor 23
     New Haven, CT 06510

     ATTN:  Mr. Anthony Kaplan, Esq.
     Email:  anthony.kaplan@usdoj.gov

(b)  U.S. Department of Justice
     Environmental Crimes Section
     601 "D" Street, NW
     Washington, D.C. 20004

     ATTN:  Ms. Lana Pettus
               David E. O'Connell
     Email:  lana.pettus@usdoj.gov
               david.oconnell@usdoj.gov

(c)  U.S. Coast Guard
     Commandant (CG-543)
     Office of Vessel Activities
     Foreign Vessel/Offshore Activities Div.
     2100 Second St., S.W.
     Washington, D.C. 20593-0001

     Attn:  LCDR Chaning D. Burgess
     Email:  Chaning.D.Burgess@uscg.mil

(d)  U.S. Probation Department
     District of Connecticut
     157 Church Street, 22nd Floor
     New Haven, CT  06510

     Attn:  Mr. Patrick Norton
     Email:  Patrick_Norton@ctp.uscourts.gov

(e)  Chalos, O'Connor & Duffy, LLP
     366 Main Street
     Port Washington, NY 11050

     Attn:  Mr. Michael Chalos, Esq.
     Email:  mchalos@codus-law.com